Good morning, Your Honors. My name is Douglas Ingram. I'm here on behalf of Wei Li, and I would like to, at the outset, reserve two minutes for rebuttal. And I'll inform you just, and hopefully everybody else will hear this as well, I'll try to assist you watching your time, but ultimately you're responsible for your time. Please proceed. Yes. Before I begin, Your Honor, it's incumbent on me to inform the Court that I am aware and have been recently made aware that the respondent is currently in the People's Republic of China. The reason I'm aware of that is that I got a call from an acquaintance a little more than a month ago saying that the U.S. consulate requires a letter in order to issue a visa to let him back in the country concerning the status of his appeal. I have informed government counsel that I have not been notified or requested that his case be dismissed. He's actively pursuing his appeal. I understand what that does to his status as a refugee, but it's certainly incumbent upon me to inform the Court of that. So, I still think there are some legal arguments that I would like to, or points I would like to make on the matter, and you can reflect on that. When did you find out your client was in? A little over a month ago, Your Honor. He'd been unreachable, and this does happen because this gentleman came to me sometime in 2009, and then they go about their business. He's not been reachable. His cell phone is off, but that doesn't mean anything to me particularly. But I have just been notified. It's not the first case for me that he's actually, and the reason he did so is because he had two parents die within three or four months of each other, and he felt like he had to go back. Now, that's basically all I know about it. When did you find out? A little over a month ago. When did you first inform the Court? Just now? I just, yes, Your Honor. Is there any explanation for the delay? Other than not really quite sure how to handle it, and is this not the proper place to do it, that's all I can promise. You didn't think of informing the clerk of court or writing a letter to the court, or that didn't occur to you? Your Honor, it might have. I wasn't sure, but I didn't do it. I'm sorry. I'm not trying to criticize. We've all been in private practice and had the tug and tow of that, but when you don't do that, when you don't tell us right away about something like that, it deprives us and the other parties involved in the suit of assessing the legal consequence of that. I understand, Your Honor. Obviously, I should have informed you all earlier, aside this was not the time. The issues, apparently, in this case, Your Honor, are under the Real ID Act, in an asylum case, credibility is based on totality of circumstances and other relevant factors. Now, in this matter, the IJ, in his oral decision, found that the Respondent's testimony that on the stand he was credible and sincere, that would be found in the Certified Administrative Record on page 55. Throughout his testimony, he was found to be credible and sincere, and that is the first prong of a credibility test under totality of circumstances. So throughout his testimony, he was found to have been credible and sincere. However, though, he found that there were three omissions during his testimony that the judge found outweighed the demeanor issue, and the first issue being . . . In your view, are they, in fact, omissions? I don't think so, Your Honor, because he delineated each and every one of these in his asylum statement, and he was there to elaborate. When you say he . . . Maybe I used the wrong word. Because I would say he did that probably more in his testimony. I'm trying to figure out what is the right way to approach evaluating omissions, especially post-real ID. So let me pose a question to you, because it seems like there has to be some limit. I mean, when somebody on their declaration writes something down and then elaborates much more, whether that's an omission or just, you know, something quite different that should have been put in the declaration. So if an application said only I was persecuted on account of my religious organization, I'm curious what your view is in terms of would an immigration judge be able to find that an alien that later testified to an elaborate story not credible? Well, you know, the problem we're dealing with here, and in this case in particular, this is a post-real ID act matter. That's exactly why my colleague is asking the question. Right. And we have an application that was submitted by an applicant that did not have benefit of counsel, so the courts have found that . . . Well, immediately didn't have . . . I mean, at the time of the declaration maybe didn't have benefit of counsel, but then later did get counsel, and then for over a year had counsel and never supplemented the record. As far as the supplemental declaration, the record was supplemented as far as it was admitted without objection, such as letters from a pastor in Tucson, Arizona, a letter from a church member in China. My reading of the law is that, firstly, it should be mentioned in the asylum application. This gentleman mentioned church activities. His first paragraph was, I was arrested and detained because of my church activities. That would give a trier of fact at least a basis to expect that there might be some further elaboration, particularly if you're looking at an applicant that didn't have benefit of counsel. Now, even lawyers at this point, or at that point, weren't quite sure what to do with the real ID act as far as what was necessary in front of a judge. And as you all know, all judges are different. For some judges, that would have been enough. I think under these circumstances, the fact that he elaborated on his church activities under questioning from his own attorney and submitted the documentation to support that he was, in fact, a Christian, he should be somewhat treated somewhat more leniently now. You're running out of time, and I want to get to the part where he's claimed he was beaten because his initial declaration, I think, indicated he said he was beaten by other prisoners. And then later when he elaborated more, he indicated he was beaten by police officers. That seems quite significant and really affects his claim and trying to figure out that's just an omission. And do you have any authority, especially post-real ID, that says an omission like that isn't enough for an IJ to make an adverse credibility determination based on that kind of an omission? Well, as far as that goes, Your Honor, he did testify that he was, during interrogation, was beaten by the police. There was some confusion as to which interrogation it was. He was being asked questions about his first interrogation. However, then he said, well, I was talking about my second interrogation. I'm sorry. In his application, did he say he was beaten by the police? He did say that, I believe. Okay. Do you have a record citation for that? I have it back there. Maybe you can pick it up in a rebuttal. Sure. Yeah. Would you like to? I would. It is in his declaration during interrogation. Okay. It was the issue of when he was placed in detention, who he was beaten by. Okay. Good morning. Jane Shoffner for the respondent. Good morning. Petitioner has not, in this case, identified any record evidence that would compel the conclusion that his client presented a credible claim for asylum and related relief. Do you want to say anything about what opposing counsel disclosed this morning, or do you want to do a supplemental letter brief on that, or what's your wish on that? I'd certainly like the opportunity to reserve the opportunity to file a supplemental. I learned about it this morning. My concern is that his return to China tends to undermine the well-foundedness of his fear. During his testimony, Mr. Lee claimed that the police were still looking for him. He submitted a letter from his wife to that effect, that he would be persecuted upon his return for violating the terms of his release. To you, it has some consequence. There's been no indication that anything has happened to him since his return, and I think that's significant. Okay. Regarding the omissions, the omission between Mr. Lee's asylum application and his testimony regarding the beating he received from the inmates is significant. In his declaration, he mentions that he was beaten by his fellow inmates, but his declaration reads as ordinary prison violence. Bad things often happen to people who are detained, but that's quite different from being beaten by your fellow inmates at the direction of the police. Did he say in the application that he had been beaten by inmates? He said that he was bullied, cursed, and beaten by his fellow inmates. During his testimony, he described a much more dramatic account of the beating he sustained by the inmates. He talks about the inmates having thrown a blanket over his head, punched him, kicked him, beat him on multiple occasions. But what's significant is that he claims he was beaten at the direction of the police. And why isn't that just an omission, and what is the law on omission post-real ID? And is there any authority that would say that somehow would preclude him from getting relief? It's certainly the part where he says that he was beaten by the inmates at the direction of the police is certainly an omission. That's not something that appears in his declaration, but he testifies to at trial. Under the Real ID Act, the I.J. can consider any omission, any inaccuracy, any— But has that been defined? It has not been defined. Shortly before argument, I filed two 28J letters regarding omissions into pre-Real ID Act cases, which we believe should guide the Court's review in this case. It's a different standard under the pre-Real ID Act case, but in Zinn and rather Kinn and Zamenhof, this Court upheld two adverse credibility determinations based in part on omissions, where the aliens told significantly more compelling stories during their hearing before the I.J. than the stories they told in their asylum applications. About that, his asylum application says he was arrested because of my church activities. Do I have that about right? That's correct. Would that preclude him from, in terms of what we're talking about, from describing the details of his arrest at the I.J. hearing? That would—no, that would not preclude him. So if he said, I was arrested, and then in his testimony described how he was arrested and what the arresting officer said during his arrest and that kind of thing, that would be simply supplementing what he had identified in his application, correct? I believe so, yes. And if he said the arrest was because of my church activities, similarly, would that preclude him from describing what church he went to and what the police, the arresting authorities, said about his religious affiliation when they picked him up? I think it would be useful for him to describe in his declaration what sort of church activities he participated in. Does it really matter in China? It does. The government doctrine, official doctrine, is atheism. That's true, but there are government-sanctioned churches where participation is not precluded. Involvement in those churches is not a cause for persecution. It's these underground Christian churches, among other organizations and groups, that are perceived as anti-government cult activities, so it would make a difference. If I can summarize what you're saying, the government recognizes that there can be supplementation of matters identified in the application, but there are some limits to that. Right, and that would be— And your case authority for that is? Well, we're relying here on the pre-Real ID Act cases because those are the only cases we have to guide us, and there the court has held that adding details is permissible, but adding details that dramatically enhance your account of persecution or tend to establish an element that you would not otherwise be able to establish tends to undermine your adverse credibility. What kind of burden are we putting on asylum seekers when they fill out an application without benefit of counsel? Are they supposed to write something like a securities fraud complaint or a 35-count drug indictment? How detailed are we going to make them do this stuff? I can't answer that question, but I know that in this case, Mr. Lee retained counsel 18 months before his individual merits hearing. You think there's a legal requirement that once Lee obtained counsel that the counsel supplement the asylum application? In this case, the IJ, I believe page 119 of the record, expressed concern about the declaration that was submitted in this case and advised counsel to review the declaration with his client and make any supplement he thought was necessary. This was at the hearing? Yes, this was at the hearing, and counsel said that he was prepared to proceed, he was comfortable with the level of detail in the application. He confirmed that... What was he supposed to do, say, I'd like a two-month recess to do this? Well, I think the immigration judge certainly was open to that possibility in reminding the parties of their obligations under the REAL-ID Act, suggesting that the burdens were more stringent under the REAL-ID Act. Did the government object to any of this evidence? The government did not object to the evidence that... At all? Well, I'm sorry, let me... The government on cross-examination certainly confronted Mr. Lee with the omissions in his declaration and in his hearing testimony. So... Move to strike? There was no move to strike, but, again, consistent with the pre-REAL-ID Act standards that the alien be confronted with the inconsistencies in his testimony, DHS did. There was also some corroborating evidence, wasn't there? There was, yes. Did the government object to any of that? The government did not object to the corroborating evidence. The immigration judge, however, found that the corroborating evidence, like the testimony, was sparse and lacking in detail. The affidavit from the wife, in particular, the immigration judge expressed concern with. I have two questions I wanted to ask. One, you start off saying that the record here does not compel a different result, but the immigration judge said he found him credible. The immigration judge found his demeanor to be credible and sincere, but noted the omissions between his declaration and his hearing testimony. That's fair. But how do his demeanor, it seems like that's a little inconsistent. The post-REAL-ID Act credibility determinations are the totality of the circumstance, so demeanor is just one of several factors the immigration judge considered. May I continue? Yes. Because there were so many omissions in the view of the immigration judge, not only with regard to whether he was beaten at the direction of the police, but also the sequence of events, when he was beaten by whom and when. It's a relatively straightforward asylum claim, and he should have been expected to tell it consistently. The last question I have for you is, you argue that cases cited by Mr. Lee do not survive the REAL-ID Act. That was, I believe, in your briefing. I'm trying to figure out if you're claiming that the REAL-ID Act has abrogated our cases, holding that omissions do not, per se, support an adverse credibility finding. Omissions are one factor to be considered post-REAL-ID. Or are you saying that it's okay for the government to cite pre-REAL-ID but not for the petitioner? Because you cited the pre-REAL-ID Act cases in your 28-J letters. Right. In our brief, we also argued, I believe, at page 18, that this case under either standard, pre- or post-REAL-ID. I'm trying to figure out what the post-ID standard is, and I'll continue searching. But thank you very much. Thank you. I very much appreciate your... Thank you. Counsel. I left myself one minute, so I'll be brief. He does mention in his application that he was punched, kicked, whipped with a police baton, kicked in the stomach and buttock by the police during his interrogation. And I would distinguish the two cases. That's in his application. This is affidavit. Affidavit. Yes. And I would distinguish between the two cases, the Kinn and Zamenhof case that the government provided, in that they were found not credible because they were referencing, elaborating on matters not previously referenced in their asylum application or their asylum interview, things that were absolutely material to their asylum claims, such as attending a protest demonstration in which they were arrested. In our case, in my case, everything was referenced. It was just elaborated on. And I think that only one issue is, did the police instruct the inmates to beat him? The other omission was deleted by the BIA. So that's otherwise there are no admissions. And I think the key prong to a totality of circumstances argument, at its first, is a demeanor finding. Thank you. Thank you very much. Counsel, just wait one moment here. How many pages? What do you want to write? Just say that there will be a post-argument order on the issue of his return to China. That's all you need to say. Okay. Do we want supplemental briefing? No. From both of you? We'll issue you one. Okay. Thank you. I think we are going to want supplemental briefing on the consequence of the client's return to China. And there will be a written order post-argument. Thank you. Thank you both. The case is submitted.
judges: Fletcher, Hawkins, Murguia